McCOMB, Appellee,

v.

GAHANNA–JEFFERSON CITY SCHOOL DISTRICT
BOARD OF EDUCATION, Appellant.

[Cite as *McComb v. Gahanna–Jefferson City School
Dist. Bd. of Edn.* (1998), 130 Ohio App.3d 664.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–331.

Decided Dec. 8, 1998.

*Cloppert, Portman, Sauter, Latanick & Foley* and *Susan Hayest Kozlowski,* for appellee.

*Scott, Scriven & Wahoff L.L.P., Julie C. Martin* and *Gregory B. Scott,* for appellant.

PETREE, Judge.

Appellant, Gahanna–Jefferson City School District Board of Education, appeals from a judgment of the Franklin County Court of Common Pleas that reversed the board's decision not to renew the limited teaching contract of appellee, Debra McComb. On appeal, the board sets forth a single assignment of error, as follows:

"The trial court erred in holding that the evaluations of Debra McComb did not meet the requirements of R.C. 3319.111(B)(3)."

Appellee was employed by the board as a teacher under a series of limited contracts beginning with the 1993–1994 school year. She was employed under one-year contracts for school years 1993–1994 and 1994–1995 and under a two-year contract for school years 1995–1996 and 1996–1997. During the 1996–1997 school year, she was assigned the duties of eighth grade science teacher at Gahanna Middle School South.

Gahanna Middle School South Principal Dennis Harden twice evaluated appellee's performance during the 1996–1997 school year. Upon recommendation of Harden and Superintendent Gregg Morris, the board voted not to renew appellee's contract for the 1997–1998 school year. In accordance with R.C. 3319.11(G)(1), appellee requested that the board treasurer provide her a written statement describing the circumstances that led to the board's intention not to renew her contract. The treasurer timely complied with appellee's request.

Apparently unsatisfied with this statement, appellee requested a hearing before the board pursuant to R.C. 3319.11(G)(3). A timely hearing was conducted in compliance with R.C. 3319.11(G)(5). At the conclusion of the hearing, the board adopted a resolution affirming its intention not to reemploy appellee.

Pursuant to R.C. 3319.11(G)(7), appellee timely appealed the nonrenewal to the Franklin County Court of Common Pleas. Appellee asserted two grounds for appeal: (1) the evaluations failed to meet the requirements of R.C. 3319.111(B)(3) because they did not include specific recommendations regarding any desired improvement and the means by which appellee could obtain assistance in making such improvements, and (2) the treasurer did not meet the requirements of R.C. 3319.11(G)(2) because he failed to describe the circumstances that led to the nonrenewal of appellee's contract. The trial court found the treasurer's notice to be sufficient under R.C. 3319.11(G)(2), but found the evaluations insufficient to meet the requirements of R.C. 3319.111(B)(3).

By its assignment of error, the board contends that the common pleas court erred in reversing the board's decision not to renew appellee's contract. More specifically, the board maintains that the evaluations met the requirements of R.C. 3319.111(B)(3).

█ In an appeal of a nonrenewal of a teacher's limited contract, a court is limited to a review of a board of education's procedural compliance with the evaluation process. R.C. 3319.11(G)(7) states:

"Notwithstanding section 2506.04 of the Revised Code, the court in an appeal under this division is limited to the determination of procedural errors and to ordering the correction of procedural errors and shall have no jurisdiction to order a board to reemploy a teacher, except that the court may order a board to reemploy a teacher in compliance with the requirements of division (B), (C)(3), (D), or (E) of this section when the court determines that the evaluation procedures have not been complied with pursuant to division (A) of section 3319.111 of the Revised Code or the board has not given the teacher written notice on or before the thirtieth day of April of its intention not to reemploy the teacher pursuant to division (B), (C)(3), (D), or (E) of this section."

The Supreme Court of Ohio has held, upon review of this section, that "R.C. 3319.11(G)(7) limits a court's scope of review to procedural matters by expressly excluding the substantive review of the merits otherwise available under R.C. 2506.04." *Kiel v. Green Local School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 149, 151–152, 630 N.E.2d 716, 718.

R.C. 3319.111(A) requires a board of education to evaluate a teacher employed under a limited contract at least twice during any school year in which the board wishes to declare its intention not to renew the teacher's contract for the

following year. R.C. 3319.111(B) sets forth specific procedures to be followed in conducting evaluations of teachers whose contracts the board ultimately decides not to renew. That statute provides:

"(B) Any board of education evaluating a teacher pursuant to this section shall adopt evaluation procedures that shall be applied each time a teacher is evaluated pursuant to this section. These evaluation procedures shall include, but not be limited to:

"(1) Criteria of expected job performance in the areas of responsibility assigned to the teacher being evaluated;

"(2) Observation of the teacher being evaluated by the person conducting the evaluation on at least two occasions for not less than thirty minutes on each occasion;

"(3) A written report of the results of the evaluation that includes specific recommendations regarding any improvements needed in the performance of the teacher being evaluated and regarding the means by which the teacher may obtain assistance in making such improvements."

In considering a challenge to a board of education's decision not to reemploy a teacher, the Supreme Court of Ohio, in Naylor v. Cardinal Local School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 162, 630 N.E.2d 725, held at paragraph one of the syllabus that "R.C. 3319.11 and 3319.111 are remedial statutes that must be liberally construed in favor of teachers." The court further held that "the failure of a board of education to satisfy the requirements of R.C. 3319.111(B)(3) constitutes a failure to comply with the evaluation requirements of R.C. 3319.111(A), and such failure will permit a reviewing court to order the board to reemploy the teacher pursuant to R.C. 3319.11(G)(7)." Id. at 166, 630 N.E.2d at 729. The court ordered the board of education to reinstate the teacher to a one-year contract based on, among other things, the board's failure to comply with the evaluation requirements set forth in R.C. 3319.111(B)(3). The court found the evaluations flawed, as follows:

"While the evaluator in these reports did in some areas provide adequate specific recommendations for improvement and means to obtain assistance, in other areas such as 'encourages student participation' he did not. * * * [W]e hold that the failure of a board of education to satisfy the requirements of R.C. 3319.111(B)(3) constitutes a failure to comply with the evaluation requirements of R.C. 3319.111(A), and such failure will permit a reviewing court to order the board to reemploy the teacher pursuant to R.C. 3319.11(G)(7)." Id. at 166, 630 N.E.2d at 729.

By contrast, the Ohio Supreme Court held in Thomas v. Newark City School Dist. Bd. of Edn. (1994), 71 Ohio St.3d 251, 643 N.E.2d 131, that the evaluations

conducted by the board of education were sufficient to satisfy R.C. 3319.111(B)(3). The board's first evaluation contained the following specific recommendations regarding improvement needed in the teacher's performance: "(1) [c]onstruct more detailed lesson plans which include topics to be taught, objectives for the day, and any homework assigned," "(2) [s]pend time each day teaching techniques of Mystery and College Writing," and "(3) [a]ssign some of the work now being done in class as homework so you have time to cover the topics during class." *Id.* at 252, 643 N.E.2d at 132. The evaluations also included the following specific recommendations as to the means by which the teacher could obtain assistance in making the suggested improvements: (1) "Review the college writing and mystery curriculum in the graded course of study," (2) review available course outlines, and (3) have a "discussion with your department chairman." *Id.* The court declared that these quoted recommendations and means to improve "clearly met the requirements of R.C. 3319.111(B)(3)."

The court further held that the second evaluation met the requirements of R.C. 3319.111(B)(3) even though it contained no specific recommendations for improvement or the means to obtain assistance. The second evaluation merely referred to the first evaluation and its incorporated contents, found that the teacher had not complied with the recommendations included in the first evaluation, and informed the teacher that renewal would not be recommended. The court held that "an evaluator complies with R.C. 3319.111(B)(3) when he incorporates by reference the statutorily mandated recommendations listed in earlier written reports that the teacher who is being evaluated has seen." *Id.* at 255, 643 N.E.2d at 134. In so holding, the court acknowledged that "R.C. 3319.11 and 3319.111 must be construed liberally in favor of teachers," but also recognized that "a court may not read into a statute a result that the language does not reasonably imply." *Id.* at 256, 643 N.E.2d at 134.

■ Applying these authorities to the instant case, we find that the written evaluation materials were sufficient to comply with R.C. 3319.111(B)(3). Consistent with R.C. 3319.111(A), Harden conducted two evaluations of appellee during the 1996–1997 school year, with each evaluation based on at least two observations of appellee's classroom performance. Harden prepared written observation summaries and evaluation narratives pursuant to R.C. 3319.111(B)(3) and met with appellee to discuss the results.

The first set of evaluation materials identified a number of areas in which appellee needed to improve her performance as a teacher: (1) classroom management, (2) maintaining on-task behavior of students, and (3) positive student interaction. The materials also contained several specific recommendations regarding the means by which appellee could obtain assistance in making the needed improvements in the areas of classroom management, on-task student

behavior, and positive student interaction, including (1) using more positive reinforcement to support desired classroom behavior, (2) providing students with alternative activities, (3) keeping instruction moving at a pace consistent with students' ability, (4) circulating around the classroom to promote on-task behavior and to informally monitor student progress, (5) making students aware of expectations for the class, lab, or activity prior to beginning the exercise, (6) pairing students who may have difficulty staying on task with students who generally stay on task, (7) more reviewing of concepts than checking of homework, (8) reteaching of a concept if there appears to be a lack of student comprehension, (9) less use of consequences for inappropriate behavior prior to questioning the student as to the reason for the inappropriate behavior, and (10) continuing enrollment in Teacher Expectations and Student Achievement Program and other professional development programs, with an emphasis on implementing the ideas, strategies, and suggestions learned in these programs to improve teaching and classroom management skills.

The second set of evaluation materials also recommended areas in which appellee needed improvement: (1) classroom climate, consistency in transitional time from one activity to another, and presentation of lesson, (2) laboratory activities, and (3) communication skills with students, colleagues, and parents. With regard to the first area of suggested improvement (classroom climate, transitional time, and presentation of lesson), recommendations as to the means by which appellee could obtain assistance in making the needed improvements included (1) continued pursuit of professional development in instruction strategies and techniques, and (2) videotaping of lessons as a means of assessing performance and critiquing performance with the aid of a colleague or successful classroom teacher.

With respect to the second area of recommended improvement (laboratory activities), the evaluation materials contained very specific recommendations: (1) "[r]eminder and referral to classroom rules re: expectations, group learning situations," (2) "[s]tate the purpose of the activity. or lab," (3) "[i]f possible, show/demonstrate the procedure," (4) "[r]ead over lab instructions/purpose/materials and problems that students may encounter," (5) "[e]nsure that all students are giving undivided attention as you review items mentioned in # 4," and (6) "[a]s the lab(s) are evaluated, changes should be made to ensure on-task behavior and focus on content. This can happen in the same day or after for consideration in future labs and activities." Further suggestions for improving laboratory activities included (1) involving more students in activities, (2) developing a formal or informal assessment strategy to ensure that students fully understand the activity, and (3) assigning lab preparation as homework rather than using instructional time.

Regarding the third recommended area of improvement (interaction with students, colleagues and parents), the following suggestions were made: (1) employing the least obtrusive intervention technique possible to manage students or redirect students back to the task, (2) regular correction of conditions that contribute to students being off task or not following directions, (3) prompt return of parent telephone calls, (4) seeking professional development, reviewing literature and making a conscious effort to improve communication with students, parents, and colleagues.

In our view, these evaluations are much more detailed in both suggestions for improvement and ways to obtain assistance than the evaluations considered in the *Thomas* case, which, as previously noted, were found to satisfy the requirements of R.C. 3319.111(B)(3). Nonetheless, the trial court found certain statements in the evaluations too vague for appellee to understand. However, R.C. 3319.111 does not place the burden upon the school board to ensure that every teacher fully appreciates every suggestion for improvement or recommendation as to the means by which the teacher may obtain assistance in making the suggested improvements. *Rickel v. Cloverleaf Local School Dist. Bd. of Edn.* (1992), 79 Ohio App.3d 810, 814, 608 N.E.2d 767, 770–771. Judicial inquiry is limited simply to whether the board supplied "specific recommendations regarding any improvements needed in the performance of the teacher being evaluated" and whether suggestions were made "regarding the means by which the teacher may obtain assistance in making such improvements." R.C. 3319.111(B)(3). The record demonstrates that this procedural requirement was fulfilled by the board.

In *Manno v. Chardon Local School District Bd. of Edn.* (Nov. 29, 1996), Geauga App. No. 96–G–1985, unreported, 1996 WL 761991, the court found general recommendations made by the board of education sufficient to satisfy the procedural requirements of R.C. 3319.111(B)(3). In so finding, the court emphasized that its review was limited to the procedural sufficiency rather than the weight of the evaluations. Recommendations included having a colleague serve as a mentor, sitting in on another teacher's class to observe his teaching techniques, reading books or articles by specific authors regarding effective lesson planning and educational methods in questioning skills and incorporating those readings into the educational technique, assigning and monitoring notebooks by the students as an instructional tool, addressing attention to assertiveness and disciplinary control of classroom, and seeking out peers for ideas on how to improve classroom management skills and educational methods used in the classroom. The court explained: "While appellant may well be correct that these recommendations may involve general topics, we cannot say that they are not in compliance with R.C. 3319.111(B)(3), as the deficiencies in appellant's performance may well have been in these exact areas. Appellant takes issue with the

weight given to these recommendations in this appeal, not their procedural sufficiency, which is the limited scope of our review."

The written evaluations in the instant case provided both "specific recommendations regarding any improvements needed in the performance of the teacher being evaluated" and suggestions "regarding the means by which the teacher may obtain assistance in making such improvements." Thus, we hold that the evaluations met the requirements of R.C. 3319.111(B)(3). The trial court overstepped its bounds in considering the weight, rather than the procedural sufficiency, of the evaluations. Accordingly, the board's assignment of error is sustained.

For the foregoing reasons, the judgment of the Franklin County Court of Common Pleas is hereby reversed and remanded for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and MASON, JJ., concur.